By the Court.—O’Gorman, J.
—This is an action1 to recover damages to the amount of $6,250, with interest, by reason of the conversion by defendant of four hundred and ninety-nine shares of the capital stock of the “Business Address Company.”
The case was tried before Judge Truax and a jury, and a verdict rendered for $5,523.87. When the plaintiff rested his case, a motion was made for dismissal of the complaint. A motion was also made to set aside the verdict as excessive in amount, against the weight of evidence, as contrary-to law, and for a new trial, which motion was also denied. *227 Evidence was given sustaining the following statement of facts:
George Godfrey, Jr., died in the city of Hew York on February 13, 1882. He was at the time president of the 11 Business Address Company,” a corporation doing business in the city of Hew York, and he possessed certificates of stock in that company representing four hundred and ninety-nine shares and one proxy. The whole number of shares was one thousand, the par value being $10. On February 14, the day after his death, the plaintiff, who was the father of the deceased, and' Lorenzo Godfrey, the brother of the deceased, applied to the defendant for a loan of $500, and executed thereupon the following agreement:
“ Hew York, February 14, 1882.
“ In consideration of $500, to be advanced to us from time to time as we may require, we hereby assign to Mr. Ogden P. Pell, Esq., all our right and title and interest that we hold as heirs of George Godfrey, Jr., deceased, amounting to four hundred and forty-nine shares of the stock of the Business Address Company (“ Godfrey’s lists ”), to be held by the said Ogden Pell as collateral security only, the said loan to extend for the term of sixty days, at which time the said loan to be paid with interest. The. drafts of George Godfrey and Lorenzo H. Godfrey, when paid, to be considered as receipts for money advanced. The said George Godfrey and Lorenzo H. Godfrey do not convey any right during the term named to vote on said stock at any business meeting of the said company, and we further jointly and severally obligate ourselves to pay the said five hundred dollars from the first moneys that may be realized out of the estate of George Godfrey, Jr., deceased, or otherwise. Done in duplicate, erasures, interlineations before signing. Geo. Godfrey, L. H. Godfrey.
“Witness, P. E. De Mille.
“ Stock supposed to be in Business Address Company’s safe when opened to be retained.”
*228 This agreement was delivered to the defendant on the day of its date. At this time, administration had not been granted on the estate of the deceased. The certificates of this stock were at the time in an inner safe within a larger safe of the company in their office in Vesey street. The key of this inner safe had been in the possession of the deceased, but could not be found after his death. On February 20, 1882, this inner safe was broken open, and the papers of the deceased were taken out, in the presence of the plaintiff, the defendant, Mr. Murphy, attorney acting for the estate of the deceased, and Mr. Brennan, an officer of the company. Among the papers of the deceased were found nine certificates, representing four hundred and ninety-nine shares of stock issued to the deceased and one proxy. These certificates were put into a sealed envelope and indorsed by Mr. Murphy, as he testifies, thus: ‘ ‘ Certificates of stock of the Business Address Co., to be retained by Mr. Pell until the payment of his loan.” This envelope so indorsed was then, as Mr. Murphy testifies, handed to the defendant, who took the same, saying, “ Whenever you have your money to pay this loan, I shall be only too happy to return it; ” and at different times he gave to George Godfrey the sum required, $470. On March 2,1882, the plaintiff was appointed administrator of the estate of George Godfrey, Jr. On March 16, the plaintiff executed the following agreement :
“¡New York, March 16, 1882.
“In consideration of one dollar in hand paid, and a further consideration of $3,000, to be paid on or before March 20, 1882, we, the undersigned, agree to assign and deliver to James F. Brennan, or his assigns, four hundred and ninety-nine (499) shares and one proxy of the stock of the Business Address Co., now held by O. P. Pell as collateral to loan, the said $3,000 being in full payment of said stocks, with all our right, title and interest to and in same. The indebtedness of George Godfrey, J., deceased, to the Business Address Co., amounting to $896.86, to be deducted from the above amount, and put in trust *229 abiding settlement of same. The trust to be agreed upon by the parties interested.
i Felix T. M. (O. K.)
(Signed) \ Geo. Godfrey, Administrator.
( By L. R. Harbison, Attorney.”
To this document, was attached the following agreement of sale of the certificates by Brennan to one James A. Duffy :
“In consideration of the sum of $1, and other good and valuable considerations to me in hand paid, I, James F. Brennan, do hereby sell, assign, transfer and set over to James A. Duffy and his assigns forever, all my right, title and interest, in and to the within instrument, and the certificates of stock therein referred to, and I do hereby fully authorize him or his authorized attorney to receive and duly receipt for the same. In witness whereof I have this 17th of March, 1882, set my hand and seal.
“James F. Brennan.
“ Witness: Geo. B. Ward.”
Immediately after the death of Godfrey, Jr., the defendant had been elected president of the company. It is in evidence that on March 20, the plaintiff and Mr. Harbison, his attorney, and Mr. Brown, the attorney for Mr. Brennan, called at the office of the company, and the plaintiff tendered the defendant $473 and demanded the stock. The defendant refused, alleging as a reason that the deceased owed the company $1,100; and he would nob deliver the stock until that indebtedness was paid. Harbison told the defendant that the plaintiff had contracted to sell the stock to Brennan for $3,000, and Brown exhibited bills in his possession for that amount in readiness to complete the purchase ; and demanded the certificates of stock and that a proper transfer should be made. About March 26, or 27, Harbison again had an interview with the defendant together with Murphy, who was the attorney for the estate of the deceased ; and a tender of $500 was again made to defendant, who again refused. Defendant then stated that he was acting under the advice of the lawyer of Mr. Duffy, *230 and produced a letter which he had received from him dated March 21, requesting him to hold the 'stock. At the former interview of March 20, the certificates of stock were got from the safe, and produced by defendant. It is also in evidence that the defendant exhibited and called attention to a by-law of the company, prohibiting the transfer of stock when the owner owed money to the company. The defendant in Ms affidavit, admits that the indebtedness of the deceased to the company was $896.86.
This is in substance the case for the plaintiff as it appeared in evidence.
The testimony of defendant, and testimony in his behalf, although in some respects different, does not materially contradict the testimony or affect the legal aspect of the case for the plaintiff.
The jury might reasonably have concluded the facts to be, that the plaintiff, being in immediate need of money on the sudden death of Ms son, borrowed $470 from the defendant on the strength of the agreement in evidence, and on the security of the four hundred and ninety-nine shares of the stock of the company, to which deceased was entitled ; that the nine certificates, representing such shares of stock, were found with the other property of the deceased; that such certificates were delivered to the defendant, and as a pledge for the payment of the amount lent by him ; and were so received by him, not as president of the company, but as an individual, to be returned by him to the legal representatives of the deceased when the money was repaid; that the plaintiff, on receiving letters of administration on the estate of the deceased, ratified the agreement, and in pursuance thereof, on or about March 20, tendered the defendant the money loaned ; and demanded the return of the stock, which plaintiff refused.
It will be perceived that all through this case, as well in the- pleadings as in the evidence, no distinction is drawn between “shares of stock,” and “certificates of stock,” although the two phrases differ widely in technical meaning, the former being only the legal right to share in the *231 profits and capital of the company, which is of course a thing intangible and incapable of physical delivery or conversion, while the latter phrase means the documents setting forth that right, and which may pass from hand to hand, and are capable of being locked up in a safe, or delivered, or withheld. It is however clear, that the parties to this action, in using the phrase, “shares of stock,” and in all their dealings on the subject, had in view only the latter subject, that is to say, “nine certificates of stock.”
It may be remarked, that the reason for defendant’s refusal to return these certificates, as stated by him as a witness, and founded on the indebtedness of the deceased to the company, is not stated in the answer; and it constitutes no ground of defense in this action.'
The defendant having received these shares as a pledge, was bound to retain them for the purposes of the agreement, and to restore them when the money lent by him on the strength of the pledge, was returned.
The demand was made on him by the plaintiff, for the purpose of carrying out the terms of an executory agreement for the sale of the stock by the plaintiff, which depended on the return to the plaintiff of the certificates, and the defendant has proved no justification for his refusal. The plaintiff alone, at that time, was entitled to possession of the certificates. The defendant,-as pledgee, had no right to set up the claim of a third person as against the title of his pledgor (Bates v. Stanton, 1 Duer, 84; Lund v. Seaman’s Bank, 37 Barb. 132).
The fact urged on the trial of the action as a justification of refusal, to wit, the indebtedness of the deceased to the company, gave the company no lien on these certificates of stock, although it might have warranted the defendant or proper officer of the company, in refusing to enter the transfer of the stock on the books of the company. It certainly constituted no reason for the defendant to retain them in his possession after payment or tender of the amount lent by him.
*232 The plaintiff, as administrator of his deceased son, might well have hesitated to acknowledge any indebtedness to the company, and have demanded return of the certificates, notwithstanding a claim of such indebtedness.
In the agreement for the sale of the stock made by him, however, he made provisions for deposit of $896.86 pending investigation, which was the amount claimed by defendant to be due to the company. The defendant himself testified that he would not have delivered the stock any way.
The motion for a nonsuit was therefore properly denied.
The charge of the learned trial judge seems to have fairly submitted the facts to the jury, and no error was committed therein.
The question of the value of the certificates, was also left to the jury; and this court would not feel justified in setting at naught their verdict, on a question of fact so peculiarly within their proper sphere of inquiry, and sustained by evidence the weight of which it was their duty to determine.
The judgment should be affirmed, with costs, and the order appealed from affirmed, with $10 costs.
Sedgwick, Ch. J., and Ingraham, J., concurred.